I know. All right, thanks. It's been a while. How many times against Mr. Berry? Too many. He's always a worthy foe. May it please the court, the District Court erred, reversibly erred by denying Mr. Gonzalez's 2255 motion. The government concedes that counsel's advice concerning that knowledge of type and quantity of drugs was an element of the offense was constitutionally deficient. Therefore, the only question on appeal involves whether Mr. Gonzalez can show prejudice under Strickland as interpreted by Loeffler. The prejudice prong of Loeffler is satisfied because the record shows that there's a reasonable probability that Mr. Gonzalez would have accepted the plea, but for the deficient advice, and that the court would have accepted the plea and imposed it. I think the other two elements, the court accepting and all that, I think you have a good point on that. But on this reasonable probability, isn't that largely a fact question, assuming there's some evidence, you know, to support the argument? We have here two reasons he might have rejected the plea after first accepting it. One is this advice from the counsel, but the other is this thing about the duress. And that is what he brought up when they were actually re-arraigning on the plea. If he hadn't said that, the plea would have gone through. And that, the duress defense, is a legitimate defense. It may not be the best and strategically may not be the wisest thing to rely on, but there's no ineffective assistance of counsel on the duress defense. It's on this thing about was it marijuana or was it something else? And so isn't that very fact intensive to decide what, you know, whether we really believe Mr. Gonzalez, who gave inconsistent testimony, continually said he forgot stuff he clearly should remember, disagrees with his own lawyer about what was actually said? And so how can we as an appellate court get in the middle of that? Well, it is fact intensive, but reasonable probability is less than the preponderance of the evidence. And the court, in making its findings of fact, overlooked a number of things. For example, it said he hadn't supported his claim, but in his sworn 2255 motion, he said he would not have gone to trial but for the improper advice. And the two hearings on it and he testified. So this isn't something about the judge overlooked an affidavit or didn't realize a sworn statement is the same as an affidavit or some of these kind of technical things. He's actually the court is actually hearing evidence and assessing it. And much of what Gonzalez says is different from what Cisneros is saying. And much of what Gonzalez says is very unbelievable because he's saying he forgot things that involved his own criminal trial not that long ago. So if if he's the we're relying on him to say, what would he have done? I would reasonably have taken the plea. OK, you don't have to take his word for it. And if he's making a bunch of statements that call his credibility into question, they call that credibility into question, too, don't they? Your Honor, to put it bluntly, the district court committed clear error in its findings of fact. I mean, and the court does employ that standard. And I guess that's what Your Honor is getting at. First of all, Mr. Gonzalez testified that he would have gone to trial but for the inadequate advice of Cisneros. And the contemporaneous corroboration for that is that the marshal came to the court before trial when Mr. Cisneros didn't show up on time and told the court that he wanted to speak to his lawyer about pleading guilty. So it's not like Mr. Gonzalez is just making this up now. There's actually contemporaneous corroboration for that. Second of all, he and Cisneros both agreed that Mr. Cisneros misadvised him. With regard to credibility, there are two, the two most important facts are uncontroverted. One, they both agree that he was, Mr. Gonzalez was misadvised on elements. And number two, it's uncontested that Mr. Gonzalez told the marshal he wanted to talk to his lawyer about pleading guilty before the enhancement was filed and before trial. It's also uncontroverted that at the original plea hearing, he brought up the duress himself. He said, when the judge said, why'd you do it? He said, I was, I mean, he didn't use the term duress, but I was under duress. And that's what eroded and blew this out of the water because a judge isn't going to accept a plea when he feels that the person didn't actually commit the crime. Right. But it was, it was during that guilty plea when the judge gave them, I believe it was 53 minutes to go off and talk together where he was misadvised on the elements and decided to go to trial. And that's corroborated by his statement to the marshal. So whatever was said about the duress defense, that's not what caused him to go to trial. And there is independent corroboration through the marshal talking to the court at the time. And there's also independent corroboration because Mr. Cisneros in his opening statement talked about how Mr. Gonzalez did not know the type and quantity of drugs. And Mr. Gonzalez testified at the time during trial that he didn't know the type of quality of drugs. Now, let me talk about credibility. Most of what the government relies on for a lack of credibility is extraneous to the main issue. For example, it talks about, the government talks about conflicts in minutia of case preparation two years ago about what exactly happened. The government talks about Mr. Gonzalez not remembering things about what happened during his guilty plea. Well, that's totally understandable because there were a number of pauses where Mr. Gonzalez didn't understand what was going on in the case. And the judge even commented that you keep talking to your lawyer and your answers are too slow. Let me give you a break. So it was clear. And for example, the judge said, now you understand with this plea agreement, you're waiving your right to appeal. And he says, no, I don't. And the judge says, well, talk to your lawyer. He talks to his lawyer and says, okay, well, I guess I have to. Okay. And you could see that Mr. Gonzalez had no clue of what was going on. So to say he lacks credibility now when he's questioned about a guilty plea. This is so fact-intensive. Like, I can look at you and say, oh, you seem very honorable and so forth. Someone else could be looking at you and say, I think you don't even believe your own argument. And those would be just matters where that's just looking at how you're acting and your hands and your eyes and this and that. And that's exactly what district courts do every day, and appellate courts don't. So you're talking about stuff like he should not have had to remember it, but the judge thought he should have remembered it. The judge was there. So the judge is in a much better position, the district judge, judge head, to judge this than we are. You're saying as a matter of law, he's entitled to this relief. As a matter of law, there was a reasonable probability. That's essentially your argument. Because there's evidence on both sides of this. Well, but there's corroborated contemporaneous evidence that he wanted to plead guilty at that time. So for Judge Head to decide that he didn't is clearly erroneous. And in addition, aside from the factual determinations, there are errors of law in the court's determination. The court relied on Coyote and Badamula and talked about how it gave Mr. Gonzalez correct warnings of the guilty plea, which are irrelevant. Under Coyote, it makes sense if somebody says, I want to plead guilty, and the judge says, oh, you know, you could be deported. No, I want to plead guilty. And then later you say, I didn't know I wanted to be deported. Under Coyote, it makes sense to say, well, look, you were warned about this. But here, the judge never told, well, here, first, the court used the wrong analysis. It relied on Coyote and the warnings. And second of all, it relied on the fact that the evidence was sufficient, which the Supreme Court in Loffler said, no, that doesn't play into the factors at all. In Loffler, the court said, the sufficiency of the evidence has nothing to do with this because the harm is the fact that you went to, were forced or did go to trial and got a greater sentence. So the court had at least those two legal errors. And if anything, whatever the facts are, the court, this court should make clear that Coyote and Batamula and that, and it already has, as a matter of fact, in Coyote it made clear that the kind of analysis it was using in Coyote where somebody pleads guilty is not the kind of analysis, and relying on Loffler, is not the kind of analysis that the court uses in this kind of case. So I would rely on those, the court made at least those two legal errors in its analysis. And in addition, the court never, I mean, the problem here is, and the difference from Coyote is, the court advised him that the government had to prove that he not only possessed a controlled substance and that the substance was marijuana, but the court, the court never contradicted counsel's advice that that meant that he had to know that he had marijuana and the amount. And as I said in my brief, legal scholars have construed the statute to mean just that. So how is he, the client, supposed to know, oh, my client's wrong without having read the case law? So there, in essence, there are three problems here. The court made a legal error by employing Coyote. The court made a legal error by relying on the sufficiency of the evidence. And the court clearly erred, and this court does apply the clear error standard to credibility findings. They just don't get a walk in the park. The court clearly erred in ignoring the uncontested facts in the record that show that Mr. Gonzalez would have gone to trial but for the constitutionally deficient advice. Thank you, Your Honors. I request that you revert. You saved time for rebuttal. Thank you, Mr. Sokoloff. Mr. Berry. This is the court. Mr. Sokoloff, Richard Berry for the United States. Approximately 70. Okay. I don't have an exact number. Thank you. That's close enough. All right. If I could, I would like to jump directly into Judge Haynes' comments. Mr. Sokoloff has done a very good job of laying out some of the facts. He has judiciously and very carefully omitted some of the facts that are terminal to his case. First, Mr. Gonzalez appeared before Judge Head on June the 3rd for the rearrangement and entry of a guilty plea under the plea agreement. It was Mr. Gonzalez, as Judge Haynes said, who first brought up the issue of duress. They were approximately 80 to 90 percent of the way completed with the rearrangement. Judge Head was sitting there. He looks at Mr. Gonzalez and said, so why did you have 3,600 pounds of marijuana in your truck? And Mr. Gonzalez responds, someone made me do that, sir. Being a learned and distinguished and talented district judge, Judge Head immediately recognized that there was a protracted need to discuss both duress and coercion. On June the 3rd, he read this court's pattern jury instruction. He discussed the elements of duress and coercion with Mr. Gonzalez. He asked Mr. Cisneros repeatedly if Cisneros had discussed this with Mr. Gonzalez. Mr. Cisneros stated that he had done so. Then and only then did he allow them to take a break, and they took a number of breaks during the rearrangement to discuss the plea of guilty and the plea agreement. They returned to court on July the 6th for a pretrial conference. On June the 3rd, Mr. Gonzalez first broached the topic of duress and coercion. Then there's a protracted absence for the courtroom. Mr. Gonzalez returns and says, now I want to go to trial. He now claims that was because Mr. Cisneros erroneously explained the elements of 21 U.S.C. 841. I'll come to that in just one moment. Judge Head said, fine, we'll come back on June 6th for a pretrial conference. You're set on June the 18th, which eventually became June the 20th. The up side and down side to Mr. Gonzalez testifying, Mr. Gonzalez' prior conviction and whether that would be admissible, and several other items. Now, as to Judge Haynes' question, in his written 2255 motion for habeas in the district court, Mr. Gonzalez said he went to trial only because Cisneros convinced me to go to trial by explaining that the government was required to prove beyond a reasonable doubt that he knew both which controlled substance he possessed, that it was specifically marijuana and not some other substance, and also that he possessed more than 1,000 kilograms to make the jurisdictional amount. When Judge Head set the matter for habeas hearings, there were two habeas hearings, one in April and one in May, April 6th and May 4th of 2016. At the April 6th habeas hearing, Mr. Gonzalez testified, Cisneros told me that we might be successful due to the things that were happening in Mexico, due to all the violence that was happening in Mexico, that we might be credible because he would be able to show evidence like videos that he could show to the judge. Later in his direct examination, Mr. Gonzalez also said, Mr. Cisneros told me that the government had to prove I was transporting marijuana. There was no discussion whatsoever about quantity. I would note also during the two-day trial testimony, there was absolutely no discussion from Mr. Gonzalez about quantity. Ask again on cross-examination, Mr. Gonzalez said, Cisneros said we could win based on the violence in Mexico. Mr. Cisneros, of course, testified at the second day of the habeas hearing and contradicted the overwhelming majority of Mr. Gonzalez's testimony. As Judge Head noted in his order, Mr. Gonzalez's memory failed him approximately two dozen times on things that benefited the United States, on things that had no bearing on the outcome. Let me ask you this. You know, I can only speak for myself, but I tend to agree that the conclusion of whether there's a reasonable probability you would have pled guilty in this case because of the differing facts and conflicting evidence is a question of fact, and we give deference on that, and I don't believe clear error review means we just disagree so we just do it our way. But that said, if the court did make legal errors, then what impact does that have? Do we send it back and say, this is the law judge, and given that, do you still come out the same way, or do we overlook the legal errors if they're harmless, or how do we analyze? Because I do have a concern about this conclusion that there was evidence at trial, because I don't think that has, actually, that would tend to support pleading guilty. If you're going to lose, maybe you ought to plead. So, if we were to conclude that was a legal error, the determination that there was evidence to support the conviction, that's not a legal error per se. It's a legal error as relates to this question. Then how would we handle that? What would be your assertion on that? Your Honor, I respectfully submit that if the panel concludes that that was a legal error, then it is a harmless legal error, because under the three-step test in Lafler, based on Strickland, the test for rejecting a plea offer and going to trial, which I just turned away from, as you were saying, you had a question about the reasonable probability prong. The second prong is the court would have accepted the plea agreement, and the third prong is that the conviction and or the sentence would be less severe than were actually imposed. I would respectfully submit that Mr. Gonzalez would never have gotten past the second prong. He's the one that raised duress or coercion at the June 3 hearing, and he raised duress and coercion before the first of several lengthy discussions with Mr. Cisneros, before Gonzalez himself claims Mr. Cisneros gave him the reasonable prong. So you're saying that in light of the claim, if he didn't back off the claim of duress, you don't think Judge Head would have accepted the plea? No, sir. No. I'm so sorry. No, Your Honor, I don't think. I apologize. I'm so sorry. See, it happens when you get old. It happens to me. No, Your Honor, I don't think that any district judge in the Fifth Circuit would have accepted the plea. When I say I haul drugs, and yet I did it because some bad man made me do it, I've negated criminal intent, and I've opened the door to duress and coercion on a habeas claim, just like this one. No one would accept that plea. I respectfully submit no one would accept that plea. That was the June 3 hearing. At the June 3 and both the June 6 hearings, Judge Head repeatedly discussed duress, coercion. And Mr. Gonzalez has never backed off the duress. He's never backed off. There may not be much evidence to support the duress claim. It may not have persuaded a jury, all of that. But he's never said, oh, no, I just made that up. There was no duress. Yes, Your Honor, that is correct. There was an extensive discussion at the two habeas hearings as to whether or not there was any proof, whether or not Mr. Cisneros had done any investigation. In fact, at the trial, there was no proof whatsoever of the duress and coercion claim. But he still contended. But he still contended and testified to the jury. So, I mean, somebody can force me to do something, and I may not have any proof of it, but I may say it happened. And that's my proof. I say it happened. That is absolutely correct, Your Honor, that he never backed off duress and coercion. One of the reasons the jury was out about 35 minutes. At the second habeas hearing, Mr. Gonzalez also said... Is that a long deliberation? Well, for a one and a half day trial, Your Honor, it's not terribly long. At the second habeas hearing, Mr. Gonzalez again said, I had a conversation with my lawyer. He told me we can fight this because of the drug violence in Mexico. There's no discussion. He testified twice at the habeas hearing, on direct exam and then on cross-exam a month later. There was no discussion of marijuana and or proving... And that falls in the strategic world of strict limiting. While, assuming Cisneros did tell him that, that would be consistent with the duress defense that Gonzalez is claiming, that maybe people will believe your duress defense because of the violence issues in Yes, Your Honor. And would not be improper advice or unreasonable, ineffective work by the lawyer. Yes, Your Honor. And Judge Head went above and beyond the call explaining duress and coercion on those days. He explained what would have to be proven. He explained that someone with personal knowledge would have to testify in open duress and defense. Originally, Attorney Cisneros told the court that Gonzalez's parents would testify. He later admitted at the hearing that not only his parents, but all of the rest of his family members, flatly, completely and utterly refused to come testify on his behalf. As to Mr. Socolow's claim that there's contemporaneous corroboration, there's unfortunately a seven-day gap in that contemporaneous... No more oral art, no more afternoon arguments for me. There's a seven-day gap in that contemporaneous corroboration. Mr. Gonzalez opened up duress and coercion on June the 3rd, before he had talked to Cisneros, before he claims he got the erroneous advice. On June the 10th, seven days later when the case was set for trial, Mr. Cisneros was approximately three and a half hours, four hours late for court, and Mr. Gonzalez told the marshal he would like to talk to Mr. Cisneros before the trial because he thought perhaps he now wanted to plead guilty. I would respectfully submit a classic case of trying to game the system. In any event, Judge Head was understandably irritated, both with Mr. Cisneros for arriving four hours late for jury selection and trial, and with the trial court prosecutor for filing the enhancement under Section 851, which doubled the mandatory minimum from 10 years to 20 years. Another item that is not relevant to the first prong, but is absolutely relevant to the second prong, the district court's admonishments. Judge Head again, June 3rd and June 6th, warned Gonzalez that if you go to trial, the prosecutor is going to cross-examine you about your 2006 arrest and your 2007 conviction for hauling 109 pounds of marijuana. The prosecutor is going to file, in May, file an enhancement under Section 851 to double your mandatory minimum from 10 years to 20 years. The prosecutor is going to ask you if, quite frankly, if your story is a little ridiculous. You lost 109 pounds in 2006, and so the cartel members call you up in 2013 and offer you 3,680 pounds. All of which is not relevant, as Mr. Sokolow said, under the first prong, but is absolutely relevant under the second prong. If, and to the extent that the evidence is irrelevant to the second prong analysis, I would respectfully submit that Judge Head's mistake is harmless beyond any reasonable doubt, because no district judge, no reasonable district judge, would have accepted his plea so long as he maintained the duress and coercion story. Well, isn't the standard harmless error by preponderance of the evidence in a habeas? Yes, Your Honor. In a direct criminal appeal, it's a habeas. No, it's a habeas. He never abandoned his claim that he was operating under duress and coercion, and so no one would have taken that plea. In conclusion... And what are the usual practice of, well, let's say of Judge Head, in accepting a plea on the day of trial? I mean, because I could see setting deadlines, that kind of thing, and just not letting people wait until the last minute for things. As he said at the Thursday, June 6th, final pretrial conference, I'm not going to take a plea agreement after today. I can't... So does that bear upon this? The short answer is that's not in the record. The long answer is I honestly don't know. I think that anyone would probably accept a plea, a cold plea, on the day of trial. Well, Mr. Berman, who is the same age as you? Yes, I know Mr. Berman. I know Mr. Gonzalez, and he stated that he would not have given Mr. Gonzalez the benefit of a plea agreement. Wow. Because, of course, he has sound judicial discretion in order to award credit for acceptance of responsibility, although that might have been a moot point It matters whether you get acceptance of responsibility. All that plays together, and then the judge not wanting you to wait until the last minute to give a plea. Yes. Yes, Your Honor. All right. Thank you, Mr. Berman. If there are no further questions, thank you. Mr. Gonzalez testified at his habeas corpus hearing that he went to trial because he was misadvised on the elements of the offense. Now, if we're talking about, so he did come off, quote, unquote, the other defense, and his claim was that he was misadvised. He had a conference with counsel during the 53-minute recess during the guilty plea. Mr. Cisneros told him that the government had to prove that he knew it was marijuana in his truck, and he said that's when Mr. Cisneros told him to plead guilty. Now, with regard to corroboration, one of the, for example, and it goes both ways, both the judge was wrong about Mr. Gonzalez and the judge was wrong about Mr. Cisneros. For example, the judge said, the judge relied on the fact that Mr. Gonzalez said he never heard about the enhancement until the guilty plea, but Mr. Cisneros testified to that, too, as is stated in our brief. And with regard to Mr. Cisneros, if we're talking about credibility and clearly erroneous, Cisneros was the one who misadvised my client, Mr. Gonzalez, on the elements of the offense. Tell me a case where we reversed the district court on the district court's finding of credibility. I don't have one off the top of my head, Your Honor. I'd be glad to research and submit one to you. I mean, because that just seems, I can understand if there was a legal error in sort of admitting the evidence that maybe showed the lack of credibility or whatever, but just, look, we think Mr. Gonzalez is telling the truth and you didn't. Huh, we're going to reverse you. I'm just unfamiliar with a case like that. I'm not saying it's never happened. I'm just asking, that seems very odd to me because credibility is sort of the number one thing that trial courts are allowed to decide. Right, but I mean, you can look at the record and see that the court's order is an error. He talked about, the judge had talked about their duress defense, but the testimony that came right after that from Mr. Gonzalez was about the elements of, misadvice on the elements of the offense and the court's order totally ignored that. He talked about Mr. Gonzalez's credibility, but he relied on the credibility of somebody who misadvised the client about the elements of the offense. Somebody said he never talked to the AUSA about the enhancement until the rearrangement and the AUSA said, no, he talked, it was his regular practice to talk to defense counsel post-indictment and he would have done that in this case. He's relying on a person who gave the client's confidential file away to the client's parents thinking he had a duty to them because they paid him when, in fact, the state bar rules say you have a duty to the client. I mean, this is just, you know, this is a jury argument to him. Again, I'm not saying that he had to find Mr. Gonzalez incredible, but you haven't shown me anything that shows me as a matter of law. Like, you know, if we had a physics situation where physically something couldn't have happened or something like that, maybe that's an instance where we would reverse, but this isn't a physics problem. This is a credibility issue and this is what district courts do and we don't. And you haven't really shown me something that is just, you know, immutable in this analysis that would make it impossible for him to find this. Yes, he could have found Gonzalez incredible. I agree with you, but he didn't. But, again, I just, I have to come back to the fact that the uncontroverted testimony and actual physical evidence of the marshal uttering to the court that Mr. Gonzalez wanted to talk to his lawyer about pleading guilty before the enhancement was filed and before his lawyer got to trial late is not subject to impeachment. It's not subject to credibility. It's corroborated, and I guess they could have put on the marshal. But he also wanted to plead guilty a week before and went through, as counsel opposite said, 80 percent of the hearing and then it blew up. So the fact that he might have wanted to think about pleading guilty to me does not prove as a matter of law that there's a reasonable probability he would have pled guilty because we're already seeing this is a guy who changes his mind a lot. But we do have his testimony, we have his sworn affidavit, and that was never contradicted by Cisneros. I mean, I leave it to the court. I understand the court reviews under the clearly erroneous standard, and I'm sure the court will do that, and I hope in the end that the court finds that he has met the standard of Loeffler and reverses the district court's judgment. Thank you, Your Honor.